1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY S. HURST, | )  1:07cv0188 LJO DLB |
| | ) |
| | ) |
| Plaintiff, | )  FINDINGS AND RECOMMENDATION |
| | )  REGARDING PLAINTIFF'S SOCIAL |
| v. | )  SECURITY COMPLAINT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**BACKGROUND**

Plaintiff Mary S. Hurst ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS[1]**

Plaintiff filed her application on July 18, 2002, alleging disability since September 15, 2001, due to arthritis, panic anxiety and paranoia.  AR 99-103, 111-120.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Judge ("ALJ").  AR 29-32, 35-39, 40.  A hearing was held on March 22, 2004, but Plaintiff did

not appear and her case was dismissed on March 23, 2004.  AR 55.  The Appeals Council

remanded the action to the ALJ on July 23, 2004.  AR 59-61.

On January 19, 2006, ALJ Laura Havens held a hearing.  AR 428-456.  She issued a

decision denying benefits on March 31, 2006.  AR 14-25.  On December 7, 2006, the Appeals

Council denied review.  AR 5-8.

Hearing Testimony

ALJ Havens held a hearing on January 19, 2006, in Stockton, California.  Plaintiff

appeared with her attorney, Charles Oren.  Vocational expert ("VE") George Meyers also

appeared and testified.  AR 428.

Plaintiff testified that she was born in 1949.  She received her GED and is able to read the

newspaper and perform simple addition and subtraction.  AR 434.  She became disabled on

December 15, 2001, when she walked into her kitchen and "felt funny" and did not know where

she was.  AR 434.

Plaintiff explained that she suffers from arthritis and panic anxiety.  AR 437.  She wakes

up about 8:00 a.m. and is able to dress and bathe herself without help.  She does some light

household chores and occasional light cooking.  AR 438-439.  She washes dishes and does her

laundry, but rarely grocery shops.  She watches television for about two hours a day.  Plaintiff

has a driver's license and can drive two to three hours as long as she pulls over.  AR 439-440.

She has to pull over because her leg swells and she needs to stand up.  AR 446.  Plaintiff goes to

church and movies occasionally, but mostly spends time with her 12 grandchildren.  AR 440.

She "tends to them" and explained that her four year old granddaughter is autistic, so she just has

to make sure she doesn't wander off.  AR 440.  She watches all of the grandchildren for "maybe

a couple of hours."  AR 441.

Plaintiff is unable to sleep without medication, but can sleep for six to seven hours a night

with medication.  She thought that her antidepressant made her eat more.  AR 441.  Effexor

caused her to gain 20 pounds, but her panic is more controllable.

Plaintiff thought that she could walk for two blocks before her right ankle locks up.  AR

443.  Her ability to stand varies, depending on whether her ankle is swollen.  She recently began

having problems with sitting because her back "has been real bad," but thought that she could sit

for 45 minutes to one hour.  She can lift five pounds, at most.  AR 444.  Plaintiff feels sharp,

achy pain in her right ankle, both knees, her right shoulder and left elbow.  AR 444.  She rated

her pain, with medication, at a six, on a scale of one to ten.  AR 445.

Plaintiff explained that her anxiety causes her to panic easily, and that anything

unfamiliar, unexpected or not in order sets it off.  Medication doesn't seem to help.  AR 445.

When questioned by her attorney, Plaintiff testified that she had two crushed discs in

2002, which caused her to have trouble sitting in a fixed position.  She thought she could sit in

one position for about 45 minutes before a nerve in her neck pinches and her arms throbs.  AR

447-448.  She can't grasp with her hands as well as she could before, but she can type a little.

AR 449.  When her legs swell, she lays down for 20 to 40 minutes.  AR 449.

Plaintiff also has problems with concentration.  She has to re-read things a lot and as soon

as she feels "any sense of urgency, pressure, have to know it," "something just shuts down and

[she] can't comprehend what [she] just read."  AR 450.  She gets scared and just can't remember.

Plaintiff explained that she failed at two of her prior jobs because she failed to produce and

didn't get along with the manager.  AR 450-451.  Since her husband committed suicide in 1996,

Plaintiff has been unable to live anywhere, work anyplace, or get along with anyone.  She also

has double vision for which there is no treatment.  AR 451.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's

age, education and experience, who could sit for eight hours, stand for two hours and walk for

two hours.  This person could carry 10 pounds occasionally, and lift and carry 10 pounds

frequently.  This person has "a fair ability to understand, remember and carry out complex and

detailed job instructions and a fair ability to maintain attendance."  The ALJ defined "fair" as

"limited but satisfactory."  AR 454.  The VE testified that this person could perform the positions

for which Plaintiff had transferrable skills, i.e., insurance clerk, receptionist and telephone

solicitor.  AR 454.

1

<u>Medical Evidence</u>

2 _____On March 27, 2001, Plaintiff saw T. Moon, M.D., for an initial psychiatric evaluation.

3 She has a history of alcohol dependence.  On mental status examination, her affect was full and

4 her mood was euthymic.  Dr. Moon diagnosed a history of alcohol dependence, rule out anxiety

5 disorder, and benzodiazepine dependence (Xanax).  AR 191-192.

6 _____Plaintiff returned for counseling on August 15, 2001.  She reported that her anxiety and

7 panic were under control.  AR 187.

8 _____On October 25, 2001, Plaintiff reported that she got a job.  Her affect was full and her

9 mood was euthymic.  She was stable on her medications.  AR 184.

10 _____Plaintiff was stable on her medications on November 20, 2001.  She was alert and

11 oriented and her affect was bright.  AR 183.

12 _____Progress notes from January 24, 2002, indicate that Plaintiff suffered from panic disorder

13 and personality disorder, not otherwise specified, but was stable on her medications.  AR 180.

14 Plaintiff underwent x-rays of her right ankle on July 15, 2002, which showed post

15 traumatic arthritis.  The x-rays revealed an old fracture deformity of the distal fibula, and there

16 may have been an old fracture involving the posterior distal tibia, as well.  The ankle joint space

17 was "practically obliterated."  AR 257.

18 On July 18, 2002, Plaintiff underwent an initial evaluation at Stanislaus County

19 Behavioral Health and Recovery Services.  She reported that her husband committed suicide six

20 years ago and it has been "downhill from there."  She was frustrated by her inability to work, and

21 although she denied depression, she complained of feeling unhappy, miserable and sometimes

22 hopeless.  AR 222.  She also complained of panic and paranoia.  She was sleeping well and had a

23 good appetite.  Plaintiff was diagnosed with depressive disorder, not otherwise specified, rule out

24 mood disorder, and personality disorder, not otherwise specified.  AR 219.  Her prescription for

25 Xanax was refilled.  AR 223.

26 On July 31, 2002, Plaintiff reported that she was "doing fine," but questioned why she

27 could not keep a job.  AR 219.

28

On August 9, 2002, State Agency physician Donald R. Walk, M.D., completed a Psychiatric Review Technique form.  He believed that Plaintiff's mental impairments were not severe.  He opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence and pace.  AR 224-234.

On September 3, 2002, Plaintiff underwent an Adult Intake Screening Assessment at Sutter-Yuba Mental Health Services.  She reported an incident in June when she was at home and became confused and disoriented.  She also explained that she has been anxious, impulsive and indecisive since her husband's suicide.  She described her health as good, but noted her thyroid problems and stated that she has trouble falling and staying asleep.  On mental status examination, she appeared fatigued and her remote memory was impaired.  Her concentration was within normal limits.  Her affect was sad and her mood was depressed, sad, fearful and anxious.  Her thought process was within normal limits, although scattered, and her thought content was paranoid.  Judgment and insight were adequate.  Plaintiff was diagnosed with anxiety and depression.  The social worker who performed the evaluation opined that Plaintiff had significant impairments in "living arrangements," "education/occupation/job," "financial/economic issues," and "social relationships."  AR 288-296.

On September 9, 2002, Plaintiff saw Yash Brar, M.D., at Sutter County Outpatient Clinic.  Plaintiff reported a history of anxiety, right ankle pain and hypothyroidism.  Pain medication helps her ankle "some" and the Xanax helps her anxiety and "scared feeling."  She tried numerous antidepressants, but they did not work and caused side effects.  On examination, Plaintiff was pleasant, but slightly anxious.  She had very limited range of motion in her right ankle with some thickening and bony irregularity on the lateral aspect, and mild tenderness.  Dr. Brar continued her medications and discussed the addiction potential of narcotics.  AR 269-274.

Plaintiff saw Ray Raven, M.D., for a consultive orthopedic examination on September 29, 2002.  She complained of right ankle pain and a "nervous breakdown."  AR 238.  Plaintiff reported that she had an ankle injury in the late 1970s that required surgery and has had chronic ankle pain and progressive stiffness since then.  On good days, she can do her household chores,

but on bad days, she has difficulty driving and cannot "even enjoy her hobbies." Plaintiff did not walk with a limp and her gait was normal. Range of motion in her ankle was limited. Motor strength was 5/5 throughout and the sensory exam was normal. Dr. Raven diagnosed a healed ankle fracture with subjective pain and some limited range of motion. He opined that Plaintiff could stand/walk for about two hours in an eight hour day, and might benefit from an assistive device when she has to stand or walk for long periods of time. She could sit without restriction. Plaintiff could lift and/or carry 10 pounds frequently, 20 pounds occasionally, but the amounts would be further limited if she used an assistive device. AR 238-241.

On October 2, 2002, Plaintiff returned to Dr. Brar for follow up on her hypothyroidism and anxiety. She reported a history of right ankle pain, but stated that she could not work because of her stress and anxiety. On examination, she was in no apparent distress but appeared slightly anxious. Dr. Brar diagnosed anxiety/depression, possible post traumatic stress disorder, hypothyroidism and a history of arthritis in her right ankle. He noted that she was disabled through October 20, 2002, based on her stress/anxiety and limitations with prolonged standing and walking. AR 263-264.

On October 22, 2002, State Agency physician John Stanton, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for at least two hours, and sit for about six hours. He assigned no further limitations and noted that Plaintiff was credible. AR 242-249.

On May 15, 2003, a State Agency physician completed a Psychiatric Review Technique form[2] and opined that Plaintiff did not have a severe impairment. He opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence and pace. AR 297- 310.

On May 19, 2003, State Agency physician C. Richard Dann, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for at least two hours, and sit for about six

---

[2] The physician mistakenly noted that date last insured as December 31, 2002, rather than December 31, 2003.  AR 297.

hours.  Plaintiff could never climb ladders, ropes or scaffolds and could occasionally climb ramps and stairs.  She could occasionally balance, stoop, kneel, and crouch, but could never crawl.  AR 311-318.

_____Plaintiff saw Karin Forno, M.D., on November 18, 2003, and complained of pain when she lifted her head.  Dr. Forno diagnosed degenerative disc disease in her neck with cervical radiculopathy affecting her left arm.  AR 348.

_____Plaintiff underwent a comprehensive psychiatric evaluation performed by Larry Sutter, M.D., on January 21, 2004.  Plaintiff complained that she has been in a state of shock since her husband committed suicide in 1996.  Plaintiff reported a past suicide attempt and psychiatric hospitalization.  She currently lives in a room provided by her ex-boyfriend and does the laundry, cleans the house and does the grocery shopping.  On mental status examination, she was animated and her affect was labile at times.  Her short term memory was intact, as was concentration and abstract judgment.  Dr. Sutter diagnosed depressive disorder, possibly bipolar disorder, and alcohol dependence in sustained full remission.  Dr. Sutter opined that Plaintiff would have at least a moderate impairment in dealing with co-workers, supervisors and the public, a moderate impairment in performing detailed and complex tasks, and a moderate impairment in maintaining regular attendance.  Dr. Sutter indicated that Plaintiff "needs to see a psychiatrist as soon as possible for evaluation and treatment."  Based on Plaintiff's statement that she has filed for bankruptcy twice and would do so again if she had the money, Dr. Sutter recommended that she have a payee.  AR 326-332.

_____Plaintiff saw Dr. Forno on January 30, 2004.  She had numbness and pain in her left wrist, which Dr. Forno attributed to probable mild basal joint arthritis.  AR 345.  She also had a trigger point in her right thumb.  AR 345.  She was prescribed Vioxx.

Plaintiff returned to Dr. Forno on March 16, 2004.  The pinched nerve in her neck had resolved, but she was still experiencing pain in her left wrist.  Dr. Forno noted it was "probable osteoarthritis."  AR 343.

On October 6, 2004, Plaintiff saw Dr. Forno and complained of left shoulder pain.  She had mild and moderate decreases in range of motion in her left shoulder.  Dr. Forno attributed her

7

1  pain to shoulder tendonitis/rotator cuff syndrome and a mild shoulder impingement.  Plaintiff
2  received a lidocaine injection.  AR 338.

3  _____Plaintiff returned to Dr. Forno on January 18, 2005.  She had fair range of motion in her
4  right shoulder, with pain only on extreme abduction.  Her left knee cap was swollen and a
5  patellar compression test was positive.  Dr. Forno diagnosed probable patella femoral syndrome.
6  AR 335. _____

7  _____Plaintiff was hospitalized in Stanislaus County from February 14-17, 2005, after she self-
8  referred for suicidal thoughts.  Upon discharge, she was diagnosed with major depressive
9  disorder, recurrent, severe, without psychotic features, post-traumatic stress disorder, and anxiety
10  disorder, not otherwise specified.  Her Xanax was discontinued and she was started on Klonopin
11  and Wellbutrin.  Her depression and anxiety improved.  Her affect was brighter and her mood
12  was more stable.  Jonathan Cheang, M.D., felt that Plaintiff's prognosis was fair to good,
13  depending on her compliance with outpatient care and treatment.  AR 355-359.

14  _____Plaintiff saw Dr. Forno on March 8, 2005, and complained of feeling depressed.  She also
15  complained of left leg and knee pain, right ankle pain and chronic shoulder pain.  AR 335.

16  _____On April 13, 2005, Plaintiff returned to Dr. Forno.  She reported that the antidepressants
17  were working and that she felt positive and could think of her future.  Her right shoulder was
18  tender on range of motion testing, as was her right ankle.  Her left knee was also bothering her.
19  AR 334.

20      On April 14, 2005, Plaintiff's therapist at the Center for Human Services wrote a letter
21  indicating that Plaintiff's issues have led to anger, which causes her problems in social settings
22  and in the work place.  Her areas of concern included her non-compliance with medication, her
23  inability to apply what she learns in therapy and her failure to complete Anger Management
24  classes.  AR 368.

25      On May 1, 2005, acupuncturist Hua Shu Shen diagnosed Plaintiff with cervical vertebrae
26  compression and wrist arthritis.  Some pain was released with treatment.  AR 360.

27      Dr. Forno completed a Physical Work-Related Impairments form on May 3, 2005.  She
28  stated that Plaintiff partially improved with treatment and that there were no compliance issues.

She further opined that Plaintiff was likely to improve slowly over the next year or so. Physically, she could occasionally lift and carry up to 10 pounds, sit for six hours, stand for two hours and walk for one hour. She could never climb, crouch, kneel or crawl, but could occasionally balance and stoop. She could never reach or push/pull, could frequently handle and feel and could continuously hear and speak. She had to avoid concentrated exposure to heights, wetness and temperature extremes. AR 369-373.

On June 21, 2005, Plaintiff's chiropractor, James V. McMillan, competed a Physical Work-Related Impairments form. He explained that after treatment, Plaintiff had "very occasional right shoulder pain without significant physical exertion" and "very occasional neck pain." AR 375. Plaintiff could occasionally carry up to 10 pounds. Her sitting, walking and standing were not affected. She could occasionally grasp with her right hand. Plaintiff could occasionally climb and balance, but could never stoop, crouch, kneel or crawl. She could frequently handle and occasionally push and pull. AR 375-379.

On July 1, 2005, Plaintiff was examined by Robert L. Morgan, Ph.D. On mental status examination, Plaintiff was tense and mildly agitated, with significantly a depressed mood and moderately restricted affect. Her memory and concentration were impaired. Dr. Morgan diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features, post-traumatic stress disorder, by history, anxiety disorder, not otherwise specified, by history, alcohol dependence, in full and sustained remission for a number of years, and pain disorder associated with both psychological factors and a general medical condition. He believed that she met the criteria for depressive disorder. He opined that Plaintiff would have marked restrictions in activities of daily living, marked impairments in maintaining social functioning, and marked impairments in maintaining concentration, persistence and pace. She has a fair ability to understand, remember and carry out simple instructions, but is markedly impaired in her ability to relate effectively to colleagues, supervisors and the general public and in her ability to maintain attendance. AR 390-400.

On July 11, 2005, Dr. Forno completed a Questionnaire and opined that Plaintiff was precluded from performing full time work at any exertional level based on pain in her arms, right

1   shoulder, right ankle and difficulty concentrating and dealing with stress.  At one time, Plaintiff

2   could sit for one to one and a half hours and stand and/or walk for one hour or less.  During an

3   eight hour period, Plaintiff could sit for eight hours, with breaks, and stand for one to two hours.

4   She needed to lie down for one to two hours during an eight hour day.  She would have difficulty

5   keying or typing due to hand and arm pain.  Dr. Forno believed that these impairments existed

6   since November 18, 2003.  AR 381.

7        ALJ's Findings

8        The ALJ determined that Plaintiff was insured through December 31, 2003.  Based on her

9   review of the medical records, she found that Plaintiff had the severe impairments of arthritis and

10  anxiety.  AR 19-20.  Despite these impairments, Plaintiff retained the residual functional capacity

11  ("RFC") to sit for six hours, stand and/or walk for two hours, and lift and/or carry ten pounds

12  frequently and occasionally.  Plaintiff could understand, remember and carry out simple job

13  instructions and has a fair ability to understand, remember and carry out detailed or complex job

14  instructions.  Plaintiff has a fair ability to maintain attendance.  AR 21.

15      Given this RFC, the ALJ found that Plaintiff could not perform her past relevant work,

16  but could perform a significant number of jobs in the national economy, such as insurance clerk,

17  receptionist and telephone solicitor.  AR 23-24.

18                              **SCOPE OF REVIEW**

19      Congress has provided a limited scope of judicial review of the Commissioner's decision

20  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

21  the Court must determine whether the decision of the Commissioner is supported by substantial

22  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

23  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

24  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

25  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

26  401.  The record as a whole must be considered, weighing both the evidence that supports and

27  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

28  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

10

1   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

4   substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

5   Cir. 1987).

6   **REVIEW**

7          In order to qualify for benefits, a claimant must establish that he is unable to engage in

8   substantial gainful activity due to a medically determinable physical or mental impairment which

9   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

11  such severity that he is not only unable to do her previous work, but cannot, considering his age,

12  education, and work experience, engage in any other kind of substantial gainful work which

13  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15  Cir. 1990).

16         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Here, the ALJ determined that Plaintiff (1)

19  had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an

20  impairment or a combination of impairments that is considered "severe" (arthritis and anxiety)

21  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

22  impairment or combination of impairments which meets or equals one of the impairments set

23  forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work;

24  but (5) retains the RFC to perform a significant number of jobs in the national economy.  AR 19-

25  24.

26         Here, Plaintiff argues that the ALJ (1) failed to properly evaluate her mental and physical

27  impairments; (2) presented the VE with an ambiguous and incomplete hypothetical; and (3)

28  failed to adequately address her credibility.

**DISCUSSION**

A.   Evaluation of Plaintiff's Impairments

Plaintiff argues that the ALJ improperly evaluated her mental impairment by giving nominal weight to the July 21, 2004, psychological evaluation performed by Dr. Sutter. Similarly, she contends that the ALJ improperly dismissed Dr. Forno's January 30, 2004, notes relating to Plaintiff's left wrist.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

1.   *Dr. Sutter*

Plaintiff contends that the ALJ improperly rejected the January 21, 2004, functional assessment by Dr. Sutter.

In reviewing the evidence of Plaintiff's mental impairment, the ALJ began by setting forth Plaintiff's history of treatment for anxiety and panic symptoms, beginning in December 2001.  AR 20-21.  The ALJ followed her treatment through 2005, concluding with Dr. Morgan's July 1, 2005, psychological evaluation.  AR 23.

As this was a Title II action, Plaintiff was required to demonstrate that her disability began on or before the date her disability insurance expired, December 31, 2003.  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Based on her review of the evidence, the ALJ determined that Plaintiff retained the RFC to understand, remember and carry out simple job instructions, as well as a fair ability to understand, remember and carry out detailed or complex job instructions and maintain attendance.  Determining that Plaintiff could perform a significant

number of jobs in the national economy, the ALJ found that Plaintiff did not demonstrate

disability prior to December 31, 2003.

In support of her RFC analysis, the ALJ reviewed Dr. Sutter's belief that Plaintiff would

have at least a moderate impairment in dealing with co-workers, supervisors and the public, a

moderate impairment performing detailed and complex tasks, and a moderate impairment in

maintaining regular attendance.  AR 22-23.  ALJ Havens assigned it "appropriate weight," noting

that it was "rendered after the date the claimant was last insured for disability benefits."  AR 23.

She also explained that the assessment was "not entirely consistent with the treatment records

which do not reflect the degree of impairment that the claimant related to the consultive

examiner."  AR 23.

Plaintiff disagrees with the ALJ's reasons for giving "nominal weight" to Dr. Sutter's

opinion.  Opening Brief, at 23.  Prior to addressing her specific arguments, the Court notes that

Dr. Sutter's opinions were not written in terms of what Plaintiff *could* do, despite her

impairments.  Rather, he explained that she would have moderate limitations in certain areas, and

it is therefore difficult to say with certainty that the ALJ gave his assessment "nominal weight."

In other words, because Plaintiff has moderate limitations in certain areas does not necessarily

mean that she cannot function sufficiently in these areas in terms of the RFC finding.  *See eg.*

*Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007) (the "step two and step five determinations

require different levels of severity of limitations such that the satisfaction of the requirements at

step two does not automatically lead to the conclusion that the claimant has satisfied the

requirements at step five.").

Turning to Plaintiff's arguments, she first contends that the ALJ should not have

questioned the opinion because it was rendered after December 31, 2003, Plaintiff's date last

insured.  Plaintiff argues that she saw Dr. Sutton 21 days after her date last insured and that

nothing in his opinion indicated that Plaintiff's limitations were not present prior to December

31, 2003.  Plaintiff is correct that medical opinions rendered after the date last insured may be

relevant to a claimant's prior condition.  *Flaten v. Secretary of Health & Human Services*, 44

*F.3d 1453 (9th Cir. 1995).*  Here, although the ALJ "notes" that the opinion was rendered after

1  the date last insured, she gives it "appropriate weight." AR 23. As explained above, the ALJ's

2  RFC is not necessarily inconsistent with Dr. Sutton's limitations.

3        Plaintiff also disagrees with the ALJ's finding that Dr. Sutton's assessment was not

4  entirely consistent with the treatment records. AR 23. Plaintiff states that this is "simply

5  untrue," and points to subsequent treatment notes from Dr. Forno and Dr. Morgan's July 1, 2005,

6  assessment as supporting Dr. Sutton's findings. Plaintiff may disagree with the ALJ's

7  interpretation of the evidence, but as long as that interpretation is reasonable, the Court must

8  uphold the decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, there are

9  numerous instances in the record where Plaintiff reported that she was stable on her medications.

10  AR 180, 183, 184, 187, 219.

11        Insofar as Plaintiff contends that the ALJ incorrectly placed "outcome determinative"

12  weight on the opinion of the State Agency physician, her argument fails. While the State Agency

13  physicians concluded that Plaintiff did not have a severe impairment, the ALJ gave her the

14  benefit of the doubt by finding her anxiety severe. AR 22. The State Agency physicians further

15  found that Plaintiff had only mild restrictions. AR 224-234, 297-310. In assessing a claimant's

16  RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20

17  C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).[3]

18        The ALJ's assessment of Plaintiff's mental impairment is therefore supported by

19  substantial evidence and free of legal error.

20        2.    *Dr. Forno*

21        Next, Plaintiff argues that the ALJ "dismissed/ignored" Dr. Forno's January 30, 2004,

22  finding that Plaintiff had numbness and pain in her left wrist due to probable mild basal joint

23  arthritis. AR 345. She contends that this, as well as Dr. Forno's subsequent RFC opinions,

24

25

26        [3] As Plaintiff points out, the State Agency physician that completed the May 15, 2003, Psychiatric Review

27  Technique form erroneously listed December 31, 2002, as the date last insured. AR 297. As there was little
evidence relating to Plaintiff's mental impairment between December 31, 2002, and May 15, 2003, this was, at most,

28  harmless error. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where
it did not negate the validity of the ALJ's ultimate conclusion).

1  would preclude her from performing the manipulative requirements of the alternate occupations

2  relied on at step five (insurance clerk, receptionist and telephone solicitor).

3        Plaintiff's RFC did not include any restrictions related to her hands.  Contrary to

4  Plaintiff's assertion, though, the ALJ did discuss Dr. Forno's July 11, 2005, functional

5  assessment.[4]  In rejecting Dr. Forno's opinion that Plaintiff would have difficulty keying and

6  typing, the ALJ explains that he rejected the manipulative limitations because they were not

7  supported by the medical treatment records, which demonstrated that Plaintiff's hand and arm

8  pain had significantly resolved.  AR 23.  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

9  (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's

10  opinion.).  Plaintiff first complained of wrist/hand pain in January 2004, after her date last

11  insured, and there was little mention of it after March 2004.  Dr. Forno's own assessments were

12  also inconsistent.  Her May 3, 2005, assessment indicated that Plaintiff was likely to improve

13  slowly over the next year or so, and although Plaintiff could never reach, push or pull, she could

14  frequently handle.  AR 369-373.  Yet just a few months later, she opined that Plaintiff would

15  have difficulty keying and typing due to hand and arm pain and believed that these restrictions

16  began in November 2003.  AR 381.  Dr. McMillian's June 21, 2005, opinion also highlights the

17  inconsistencies in Dr. Forno's assessments.  Dr. McMillian believed that Plaintiff could

18  occasionally grasp with her right hand, frequently handle and occasionally push and pull.  AR

19  375-379.

20        The ALJ's RFC finding was therefore supported by substantial evidence and Plaintiff's

21  argument should be rejected.

22  B.    Hypothetical Question

23        Plaintiff contends that the ALJ's hypothetical question posed to the VE was ambiguous

24  and incomplete, and therefore has no evidentiary value.  She bases her argument on her belief

25  that the term "fair," as defined by the ALJ to mean "limited but satisfactory," is an

26  undecipherable term.

27

28       [4]  To the extent Plaintiff points to objective findings and argues that the symptoms themselves prevent work, such objective findings do not necessarily translate into a limitation.  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).

1    "Hypothetical questions posed to the vocational expert must set out all the limitations and

2    restrictions of the particular claimant . . . ." _Embrey v. Bowen_, 849 F.2d 418, 422 (9th Cir.1988).

3    The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."

4    _Sample v. Schweiker_, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's

5    residual functional capacity has no evidentiary value if the assumptions in the hypothetical are

6    not supported by the record.  _Embrey_, 849 F.2d at 422.

7         The ALJ's hypothetical included an individual with "a fair ability to understand,

8    remember and carry out complex and detailed job instructions and a fair ability to maintain

9    attendance."  The ALJ defined "fair" as "limited but satisfactory."  AR 454.  The VE did not ask

10   for further clarification and testified that a person with these and other limitations could perform

11   other work.  AR 454.  Plaintiff's attorney did not question the VE.

12        Plaintiff believes that the ALJ's use of the term "fair" and her subsequent definition

13   makes the VE's testimony ambiguous and therefore renders the decision unreviewable.

14   However, there is no indication that the VE did not understand the question or grasp the

15   straightforward definition of "fair."  Plaintiff's argument is without merit and should be denied.

16        To the extent that Plaintiff faults the ALJ for not including Dr. Sutton's moderate

17   limitations, the Court has previously explained why his opinions did not translate into an RFC

18   finding.  Plaintiff's argument is therefore without merit.

19   C.    Plaintiff's Credibility

20        Finally, Plaintiff argues that the ALJ's credibility determination was insufficient.

21   Specifically, she contends that the ALJ failed to consider the documented side effects of her

22   medication and improperly analyzed her daily activities.

23        The ALJ is required to make specific findings assessing the credibility of plaintiff's

24   subjective complaints.  _Cequerra v. Secretary of HHS_, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

25   not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

26   _Orn v. Astrue_,495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the

27   complainant's testimony, "the ALJ must identify what testimony is not credible and what

28   evidence undermines the claimant's complaints."  _Lester v. Chater,_ 81 F.3d 821, 834 (9th Cir.

1    1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

2    1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

3    severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

4    with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

5    discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

6        "The ALJ may consider at least the following factors when weighing the claimant's

7    credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

8    testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

9    record, and testimony from physicians and third parties concerning the nature, severity, and effect

10   of the symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

11   789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in

12   the record, we may not engage in second-guessing."  *Id.*

13       The ALJ set forth Plaintiff's testimony and concluded that her impairments could

14   reasonably be expected to produce the alleged symptoms.  AR 22.  However, she determined that

15   Plaintiff's allegations as to the intensity, duration and limiting effects of the symptoms were not

16   entirely credible.  AR 22.  Contrary to Plaintiff's suggestion that the ALJ "simply ascribes to

17   [her] complaints the imprimatur of not being 'entirely credible,'" the ALJ sets forth numerous

18   reasons for her findings.

19       The ALJ began her explanation by noting that Plaintiff had received routine and/or

20   conservative treatment for her impairments.  AR 22.  *Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.*

21   2007) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony

22   regarding severity of an impairment).  The ALJ next explained that Plaintiff's complaints of hand

23   and arm pain were not supported by any objective clinical findings.  Although it cannot be the

24   sole reason, an ALJ may rely on lack of objective evidence in a credibility finding.  *Lester,* 81

25   F.3d at 834.  The only indications of Plaintiff's hand and arm pain were subjective in nature, i.e.,

26   complaints of pain and numbness, and limited range of motion.  In fact, on her May 11, 2005,

27   Questionnaire, Dr. Forno simply listed "pain in arms, right shoulder, right ankle with activity or

28

17

1  in neck or arms while sitting" and "difficulty concentrating and difficulty dealing with stress" as

2  the objective findings in support of her opinions.  AR 381.

3        Next, the ALJ described Plaintiff's medication, which she found to be "relatively

4  effective in controlling Plaintiff's symptoms."  AR 22.  This, too, is a valid consideration.

5  *Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)* (ALJ's

6  finding that symptoms improved with medication was valid consideration in assessing claimant's

7  credibility).  As to Plaintiff's efforts in seeking treatment, the ALJ noted an instance of non-

8  compliance and possible drug-seeking behavior, as well as Plaintiff's failure to complete anger

9  management classes despite her complaints of explosive anger symptoms.  AR 22.  The ALJ may

10  use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin., 119 F.3d 789, 792*

11  *(9th Cir. 1997),* and may make inferences "logically flowing from the evidence."  *Macri v.*

12  *Chater, 93 F.3d 540, 544 (9th Cir. 1996).*  The ALJ considered Plaintiff's actions as

13  inconsistencies bearing on her credibility, and she was entitled to do so.

14        Plaintiff suggests that the ALJ erred by "disregarding notations from treating physicians

15  indicating that [she] experienced side-effects including nervousness from prescribed Prozac,

16  Paxil, Wellbutrin, Buspar and Effexor."  Opening Brief, at 29.  She also cites to notations

17  relating to her concern about weight gain and gastrointestinal upset.  While Plaintiff may have

18  experienced some side effects from these medications, most of the medications she cites appear

19  to have been given on a trial basis and were not continued.  More importantly, Plaintiff does not

20  allege, nor is there any evidence to suggest, that the side-effects were limiting in any way.

21  *Varney v. Secretary of Health & Human Serv., 846 F.2d 581, 585 (9th Cir. 1988)* (When side

22  effects of prescribed medication have a significant effect on an individual's ability to work, they

23  should be considered in making a disability determination).

24        In the final portion of her analysis, the ALJ described Plaintiff's daily activities and found

25  them "not limited to the extent one would expect, given the complaints of totally disabling

26  symptoms and limitations."  AR 22.  Plaintiff is able to spend time and interact with her

27  grandchildren, which the ALJ noted can be "quite demanding both physically and emotionally,

28  without any particular assistance."  AR 22.  Plaintiff testified that she mostly spends time with

her 12 grandchildren, and although she attempted to downplay it by suggesting that she merely "tends to them," it is elemental that watching twelve children at once, one of whom is four years old and autistic, requires more physical and mental stamina than Plaintiff alleges she possesses. AR 440.

While Plaintiff is correct that a claimant need not be "a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity," *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981), she mistakenly applies this principle to the credibility analysis. In citing Plaintiff's daily activities, including the time she spends watching her grandchildren, the ALJ was explaining why she found Plaintiff's allegations less than credible. The ALJ did not rely on her activities to support a finding that she could perform work-related activities, as was the case in *Vidal*.

Insofar as Plaintiff contends that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility, she is incorrect. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari*, 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

The ALJ set forth sufficiently specific reasons to permit the court to conclude that the she did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Plaintiff's claim is without merit and should be denied.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Mary S. Hurst.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings

1   and Recommendations."  The parties are advised that failure to file objections within the

2   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

3   F.2d 1153 (9th Cir. 1991).

4

5        IT IS SO ORDERED.

6        Dated:   __June 5, 2008__        _____/s/ **Dennis L. Beck**_____

7                                                UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28